Good morning. We have three argued cases this morning. The first of these is No. 15-1420 Multilayer Stretch Cling Film v. Berry Plastics. Ms. Smith. Good morning. May it please the Court. The central issue in this appeal is whether a the independent claims contain a Marcouche group, or more particularly, whether a Marcouche group in an independent claim should be construed as open in view of the fact that the claims that depend therefrom contain qualifying language to open up the Marcouche group to the use of blends, to the use of resins outside of the classes of resins, and to the use of resin additives. See, I understand the argument that it's open as far as blends are concerned. I have some difficulty understanding the argument that it's open to any and all other substances that might be used to make the layers. So what is your position as to that, that the layers can be made out of anything? I don't believe the layers can be made out of anything, but we know based on the claims that the layers can be made out of low-density polyethylene homopolymers. That's in Claim 10. And the patent also provides guidance. It certainly needs to be a resin that is capable of, you know, of meeting the limitations of those claims. If I could just clarify, as I understood it, you have the argument that says the Claim 1 list of materials can be blended, and then you have the slightly broader argument that you can add something even beyond what's specifically listed in Claim 1. Your accusations of infringement, as I understand it, and correct me if I'm wrong, don't require you to go beyond saying that what can be added is stuff that appears in dependent claims, 10, 24, 18, 19, 32. Correct. I think I understand. That is, you don't have to, you're not saying you can add anything, but just stuff referred to in the dependent claims. Yes, Your Honor. Is that right? That's correct. I believe that's correct. The infringement contentions don't require us to go and go that far beyond what we've got in the claims. Well, how do you distinguish, then, between things that are listed in the dependent claims and other things? If it's open, why isn't it open to any substance? Well, I think it has to be open. It has to be something that, you know, the claims are limited to a thermoplastic stretch wrap film. So, you couldn't use, for instance, wood. You couldn't use those types of... Oh, sure. But anything that could be... Why isn't it open to anything that could be used to make such a film? Well, I think the claims are narrower than that, and I think that the claims are limited to the thermoplastic resins that can be used in this manner. Well, but that's the question. So, any thermoplastic resin that could be used to make a film layer can be used, regardless of whether it's one of the four in the Marcouche group? I don't think that... You know, I don't know the answer to that question, to be honest with you. I think that, for purposes of this appeal and for purposes of our infringement contentions, all of the resins that Barry uses fall neatly within the class of resins that are listed in the independent and dependent claims. Well, you could get there, I assume, but you haven't made that argument, by arguing that the Marcouche group, in this case, should be interpreted as anything that is within the claims, the written description, or the claims. You don't have to go outside... I take it your argument is, we don't go outside the patent scope. Correct. But your argument is, we can do anything we want within the written description and the specification. Well, the specification includes all of the claims, so all of the claims get swept in. Is that your point? The argument is that we can do with the claims, you know, what's enumerated in the claims, and certainly there... But the problem is, we have to make sense. We have to come up with a construction that makes sense. I understand the blends argument, but I'm having difficulty seeing where the stopping point is, if anything can be... the layers can be made out of anything that is a layer. And you say you don't know the answer to that question, but we have to have a sensible... we have to understand a sensible claim construction. I think what makes sense here is, you know, of course, the Marcouche groups are open to blends. They're open to the four classes of resins that are enumerated in Claim 1 and Claim 28, the two independent claims. They're open to the use of low-density polyethylene homopolymers, and they're open to additives to those resins. Can I just suggest, I mean, I've always been worried about the same, in a way, sort of first step of getting to the position that you have about adding, allowing at least the addition of materials specified in other claims. And so I was thinking along the following lines. Marcouche groups are not all of a unit, I mean, all the same thing. It's a label, as I think Judge Rich said, that applies to a number of different things. We don't have a Marcouche group that starts with... that is only a group limited to. We also don't even have one that uses a open-ended variable or the name of a thing inside. We have something that, a layer, which is not the name of the thing in the list, but something that those are materials used to create. But in particular, we have a consisting of wherein. And so even within Claim 1, the last clause wherein, and then all the dependent claims, we have consisting of wherein. And maybe that opens up the language so that one doesn't have to say, well, consisting of either means closed or open, full stop, everything is in or nothing is in, it's more limited than that. Correct. Is that plausible? It absolutely is more limited than that. And there are, you know, there are specific limitations even within Claim 1 that the resins must fall into those categories. And so we're only talking about... But how limited is it, is the question. I think it's pretty limited. I think we're talking about those classes of resins that we discussed in low-density polyethylene as well. You know, because anything more than that and we're starting to have some issues with some other limitations that are present in independent Claim 1. And am I right that for a number of the accused products, and I'm going to try to avoid the material that I think is still more confidential but I don't remember, there's one component that you have to, for at least some of the accused products, prevail on what is a factual issue about what its makeup is and whether it fits within, I guess it's the district court's claim construction of linear low-density polyethylene? That's correct. But that's a factual issue. That's a factual issue. If that factual issue were resolved against you, then under even your broadest view of the Claim 1 language, the materials, the accused materials that include that would fall outside unless there's an equivalence claim and I don't remember what the status of that is. Right, I think that's correct. I think because linear low-density polyethylene covers the other classes of resins, the resin that you're talking about that's in question does need to fall into that category or one of those other three categories which should be encompassed by linear low-density polyethylene, at least under the district court's construction. And so that is correct. If it falls outside, then that's certainly a problem for us. If we were to say that the four listed ones, what would that do to the infringement issue? So it's open to blends, but it's not open to low-density polyethylene. Some of the subject films would infringe and some of the subject films would not infringe under that construction assuming that the recipes that we received from Barry's counsel that were crafted solely for purposes of this litigation, assuming that the facts bear out that that is, in fact, the way that Barry makes its stretch films. We uncovered evidence in discovery just a week or two before our response to summary judgment was due that casts some serious doubt as to the composition of those subject films. But if we assume for a minute that everything that we received is correct, then there's a divide as to which films would infringe under that construction. But certainly, there would be films, subject films, that infringe. Is there an issue in this case about obviousness and anticipation? There is not. This patent was subject to three separate reexaminations. The claims of the patent were affirmed all three times by the court. Well, I understand that, but that's not necessarily binding on the district court. Sure, sure. I mean, were there counterclaims that were just dismissed without prejudice for purposes of creating a final judgment that might revivify? Correct. In any case, we've got, you know, obviousness and anticipation arguments that are raised, but they weren't fully litigated, and we think, sure. Well, that's all I was asking, but there are such arguments in the case. Yes, yes, Your Honor. And at this point, I'd like to reserve the remainder of our argument for rebuttal. Okay. Thank you. Mr. Hagedorn. Thank you. May it please the Court? I can agree with one thing that counsel has stated. This case does – the central issue to this case is the Marcouche language. And – What, what? The Marcouche language. It's a well-settled canon of construction. Marcouche language has the consisting of, which has been well settled. But isn't that just a presumption? I mean, it's not an absolute requirement that you use the language, for example, that appears in the MPEP for opening a claim to combinations. That's just a presumption, isn't it? It's a clear presumption, well-settled presumption. And there's – the difference in this case is there is nothing else that would ever rebut that presumption. Well, why doesn't the language of the specification talking about blends and the fact that Claim 24, for example, talks about blends, suggest that blends are within the claim, Claim 1, for example? Well, of course, whenever we construe claims, we don't reach back to limitations. The claims don't say, I claim what is, you know, in essence an omnibus claim, I claim what we've disclosed. That's not the situation. Prosecution happens in an ex parte fashion where the applicant gets to stake out its property. Right, but I know all of that. But, I mean, the classic, simple Marcouche claim, and I use classic simple because I'm suggesting that there are non-classic, non-simple ones, and of which I suspect this is one, is, you know, an inhibitor consisting of water or four other things, right? That's added. Inhibitor is actually the class of which those instances, the listed things, are instances. We don't even have that here because the layer is not a, you know, an ethylene or polyethylene or the various things. The layer is composed of that. So it feels to me that this is more like a bowl of ice cream selected from a group consisting of chocolate, strawberry, and vanilla. I would not, thinking of those words all by itself, think that a bowl that is a Neapolitan bowl, if that's what it's called, if I remember, would be excluded. Why wouldn't it? Why wouldn't it be? And second, I guess, I'm sorry this is taking a long time, it's not just consisting of. It's consisting of wherein, and the wherein starts to add some information. Well, the wherein I don't think is present. It says selected from the group consisting of, and that lists the resins. Right, but the last clause of claim 1, wherein, which I guess was added in one of the many re-exams or something, right? That's the first wherein clause, and then there's a series of dependent claims, which have wherein, wherein, wherein, wherein, and it's the language taken as a whole that we need to interpret. The wherein clause of claim 1 is wherein there's different compositional properties, which is not the subject of this case or this proceeding. I'm sorry, it is. There's an argument that's made that the subject of different compositional properties, and is that what claim 32 picks up? No, that's resin additives. But doesn't it say, one of them, claim 10, is it? Claim 24? One of the, you know which claim I'm talking about, says the compositional property is the resin additive, doesn't it? That's claim 32. It's 32, okay. But by saying compositional property, does not go back and open up and close Marcuse-Wood. Why not? Well, for one, statutorily, dependent claims must further limit. It depends, it depends what, this is sort of chasing the tail or something. Why would one take just the consisting of clause in claim 1, and ignore the rest of claim 1, decide that it must be closed, and therefore contrary to other things in the dependent claims, those other things make, you know, cause a, you know, a 112D problem. Why isn't it better to say what you have in claim 1 is a non-variable, non-generic term, but something, a layer, that is made up of the things listed, so it's not even a classic Marcuse thing, with consisting of, and then an additional phrase, wherein, which tells you something about what can be in there, or doesn't have to be in there. Right. And the wherein clause with the different compositional properties can be, for example, one of the inner layers is selected from metallocene, LLDPE, the next adjacent could be a non-metallocene, so they have different compositional, that phrase does not go back and overturn the well-settled principle that the consisting of, and I would argue that this is a classic textbook Marcuse limitation. But come back to the specification in claim 24. Clearly there's a contemplation here that blends would be within claim 1. Is there not? If you say within claim 1 as a whole, you would be correct. But claim 24 says wherein at least one layer comprises a blend of at least two of said resins. It doesn't say wherein one of said inner layers of subgroup A or subparagraph B are blends. I'm not sure what you're conceding and what you're not conceding. Clearly the specification talks about blends of the four listed compounds, right? The specification talks of blends of resins. Right. Including in the inner layers? Including in the inner layers. Okay. Not just the two pieces of bread on the sand. Right. And claim 24 talks about blends in the inner layers, right? Okay. And there's where I dispute. Claim 24 does not. It says wherein at least one layer, there are seven layers, only five of which are inner layers. There could be other inner layers that are not one of the Marcuse, closed Marcuse inner layers. So you could have a nine-layer film. You could have a central layer that is a blend. That claim 24 makes sense. One of the outer layers could have a blend. Claim 24 makes sense. Claim 24 does not make sense if you try and apply that to an inner layer, which it does not. Claim 24's express language does not say wherein one of the inner layers is a blend. So as the district court, Judge McCollough, Judge Young, when they reviewed this and they looked at the construction, they were correct to say through these principles of claim construction, when we get to claim 24, it doesn't change the analysis, at least the way they have construed the claims, to preserve validity. You'll recall that Judge Young said the second part of this is if we adopted multi-layers strained argument, what happens is there's unreasonable certainty, which is the whole point, the notice provision. I don't know why it's so uncertain if you say that blends are within claim one. I mean, it's not that uncommon. Why shouldn't we look at the specification and see that blends were contemplated and that claim one should be interpreted to accommodate that? If the applicant wanted to claim blends, it was incumbent upon them, when choosing their language, to make sure that blends were covered. Well, but that's sort of saying that the Marcouche principle is and the close nature of it is more than a presumption, that it's an absolute rule unless you write your claim language differently. Well, I think it is. The presumption becomes a rule, as the Abbott case says, unless there is qualifying language in that claim, which does not exist here. Well, why did Abbott go on to discuss the prosecution history if that couldn't have achieved a different result? I guess what I would fall back to is if this shoe were on the other foot and I were trying to point to the specification and say there are more limitations in the claims, I'm sure the other side would be jumping up and down. And that's the same sort of principle here. After the claims have been drafted and they have chosen specific language, I come back to the well-settled. I don't think there's a dispute in the case law. Well-settled, they chose language. It doesn't matter that they could have chosen some other language. Can I just ask you about the case law because, and I think I maybe, though I've said it several times, haven't said it with clarity. When I looked at the various cases that talk about this class of things called Marcouche groups, which is not a unitary thing, cases like Abbott and the several cases discussed in the relevant MPEP section all begin with a word or a variable, an R or an X or something that is, if Abbott is an inhibitor. And then the things that are listed in the group are those things. We don't have that. Polyethylene, or I pick one of the linear low density or something, isn't a layer. It is the material out of which you can create a layer. Are there any precedents that you know of where the word that introduces the list of things in what we'll call a Marcouche group is something other than the generic term for those things or a blank variable like number, R, whatever, that is purely a stand-in for those things? I can't recall anything that would fit that. I couldn't find one. And I don't recall it. I can't say it doesn't exist. I think in this case, in the reference to the layer selected from, when we're talking about a multilayer polymeric film and we say a layer selected from resins, well, of course, each layer in this respect is a polymer. It's made up of a polymer. It's made up. So it's saying we're in the five inner layers are made up of a resin selected from this group. So I'm not sure I'm answering your question. Well, it seems to me that the gist of the disagreement you have in your position is there is some blindingly clear and rigid meaning of a certain set of words. This uses that set of words. So never mind anything else about context. Those words must have that meaning, your closed Marcouche meaning. The premise of all of that is that there is a blindingly clear body of law that says this set of words has that meaning. And I guess I'm a little bit uncertain whether that's true. Well, just real quick with that, because I would like to get to my appellate issue if I may real quick. But I think here is what we have to look at is, again, it's a series of looking at claim construction, which goes back to the well-settled principle. There is no qualifying language, and we can't go back to the specification or later claims that must further limit to undo that presumption, well-settled understanding. Because of the notice provision, one of our ordinary scholarly art picks up that patent and reads the Marcouche. First thing that comes to mind is closed. There's no qualifying language. If we go to that rationale, then it becomes unreasonable as to what is the scope, as some of the questions were. Where's the limit? What resins could be used? Could it be ethylene vinyl alcohol? Could it be EVA? Could it be polyester? Is it anything listed in the patent? It becomes unreasonable to one of our ordinary scholarly art, which is that roadblock that district court identified. If I may turn real quick with the Rule 11, it all comes back to the same thing. The plaintiff never had a reasonable basis under the claim construction. They had previously taken the closed approach. So your position is that not only are you right about the claim construction argument you've been making in the last 13 minutes, but you're so right it was sanctionable for them to argue the contrary. I think that plus the lack of a pre-suit investigation, so they have to come up with a reasonable construction. Actually, I was curious about this. Is there a way that somebody, some sophisticated person, handed your material can figure out what its polymer composition is? I believe so. You believe so? I believe so. I didn't remember your saying that in your brief, and I guess I'm also, I think I'm remembering, that they said they supplied or offered to supply to the district court a confidential analysis that showed what they could determine and did determine about the material ahead of the litigation. Did the district court, am I remembering it right? Yeah, I think there was a group. Never mind? You didn't act unreasonably? Well, the district court didn't provide any reasoning as to denying the Rule 11 motion. So I believe what we asked for is to. But was there a proffer of? There was an offer to a proffer of previously withheld privileged documents and an argument that it would support that there was a reasonable pre-suit investigation when even after Barry had originally filed a motion for summary judgment because the films do not infringe, the plaintiff admitted that they lacked evidence to show that all the limitations are present. That's after filing the complaint, after our motion for summary judgment. So even if they win, there should be Rule 11 sanctions imposed on them? Based on the proper analysis, there should be Rule 11 sanctions, again, because the claim construction was. . . Even if they win? If they win, you're putting me in a trick bag there, because if they win, we've missed the analysis that puts them in the win. The correct analysis was a closed Marcouche. They lacked a pre-suit investigation. They admitted non-infringement. They persisted, all of those things, and then Judge Young did not provide any substance as to what the decision was on the Rule 11, and we believe that that is an abuse of discretion. Okay. Thank you, Mr. Hagedorn. Ms. Smith, whenever we have, generally speaking, a rule for claim construction which is what all this Marcouche business is about, the point of the exercise is to provide competitors who come upon a patent, even before it's used against them, so that they can figure out what the patent covers and how to design around it. So these constructional rules of which Marcouche has won need to be reasonably clear and not so sloppy that they can mean most anything that a patent drafter might have hopes for in the future. It seems to me your construction gets a little bit into that sloppy area, and I'm a little bothered by how competitors are supposed to guess what you think is included, for example, in Claim 1. What's your reaction to that concern? I think that if Berry, well, when Berry looked at this patent, because it had this patent back in 2001, as early as 2001, when Berry had this patent, it looked at it and it saw linear low-density polyethylene. It saw very low-density, ultra-low-density, metallocene-catalyzed low-density polyethylene, and it saw low-density polyethylene. At that point, it was on notice that all of the subject films infringe. Could I ask you a question? Suppose we just had Claim 1 here, just the language of Claim 1, and there was nothing in the specification of the prosecution history or the dependent claims that illuminated its meaning. Would you agree that Claim 1, on its face, would be a closed Marcouche group? Well, if Claim 1 is indeed a Marcouche group, and I think Judge Toronto has raised some persuasive argument that it may not even be a Marcouche group, but if it is a Marcouche group, then I would say if you look at Claim 1 in a vacuum, that's... No, but try to answer my question. Yes, Your Honor. I would say that Claim 1, if you look at just Claim 1 and there's no other language in the claims or in the specification about blends or resin additives or additional resins, then it is limited to those resins. You would agree. Your version of the answer, closed group, is it's got to be one of the individual items. It can't be some blend of them. That's correct. Even within the claim. That's correct, Your Honor. Okay. But in this case, maybe this isn't a Marcouche group at all. And if it's not a Marcouche group at all, we look at the general, the fundamental tenets of claim construction, which are you look at the dependent claims, and we have dependent claims, and we look at the rest of the specification. We look at the written description, and it all leads to the unmistakable conclusion that Claim 1 permits blends because that's in Claim 24, and Claim 1 permits low-density polyethylene because that's in Claim 10, and it permits resin additives. Are you now suggesting it's not a Marcouche group? I'm saying. Because I thought your brief seemed to be very clear on that issue. I think there's a possibility that Judge Toronto is correct. I hadn't thought about it in the way that he characterized it. He hadn't thought about it, and he hadn't argued it either. That's correct. That's correct. So if we proceed under the briefing, which is that this is a Marcouche group. The district judge was at least misled to believe that, wasn't he? That's correct. The district court was led to believe this is a Marcouche group because that's what we've argued all along, and there is not a single case out there that says that a Marcouche group cannot be opened by a dependent claim. This issue just hasn't presented itself, and I would argue that the Baxter case doesn't say that the qualifying language has to be in the claim that has the Marcouche group. It doesn't say that. It says look to the claims themselves, and claims is plural in the Baxter case. That's really the key issue for us, isn't it, assuming it's a Marcouche group, whether the Marcouche group can be read separately and in itself, as Judge Dyke just suggested, as a possibility, or whether it has to be construed within the meaning of the written description and the other claims as part of the specification. Yes, Your Honor. I think that's precisely the issue. And you're saying there's no law one way or the other. That's right. And so if the court follows the tenets of claim construction that it's advocated for years, the conclusion has to be that we look to the other, we look to the rest of this intrinsic evidence, and we look to those dependent claims for the qualifying language that unmistakably is there. Okay. Thank you, Ms. Smith. Thank you, Your Honor. Thank both counsel. The case is submitted.